**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
ron@consumeradvocates.com
MICHAEL T. HOUCHIN (SBN 305541)
mike@consumeradvocates.com
651 Arroyo Drive
San Diego, CA  92103
Tel: (619) 696-9006
Fax: (619) 564-6665
[additional counsel listed on signature page]
*Attorneys for Plaintiffs and the*
*Proposed Class*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE YOUNG and JOYCETTE GOODWIN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>NEUROBRANDS, LLC, a Delaware limited liability company;<br><br>        Defendant. | Case No: 4:18-cv-05907-JSW<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Renee Young and Joycette Goodwin (collectively, "Plaintiffs"), hereby bring this Action against Defendant Neurobrands, LLC ("Defendant"), alleging that certain products manufactured, packaged, labeled, advertised, distributed and sold by Defendant are misbranded and falsely advertised and otherwise violate consumer protection laws, and upon information and belief and investigation of counsel allege as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The Defendant is a citizen of a state different from that of the Plaintiffs, the putative class size is greater than 100 persons, and the amount in controversy in the aggregate for the putative Class exceeds the sum or value of $5 million exclusive of interest and costs.

2. This Court has both general and specific personal jurisdiction over the Defendant because Defendant has conducted and continues to conduct substantial business in the State of California and Defendant's principal place of business is located in the State of California, County of Los Angeles.

3. This Court has specific personal jurisdiction arising from Defendant's decision to advertise and sell the Products in California. Defendant has sufficient minimum contacts with this State and sufficiently avails itself to the markets of this State through its manufacturing, promotion, sales, and marketing of the Products to consumers within the State to render the exercise of jurisdiction by this Court reasonable.

4. Venue is proper in this Court because Defendant conducts substantial business in this District. Plaintiff Young also purchased the Products within this District.

## NATURE OF THE ACTION

5. This is a consumer class action for violations of warranty, negligent and intentional misrepresentations/omissions and consumer protection laws, with a nationwide and California class for violations of consumer protection laws.

6. Defendant manufactures, distributes, advertises, markets and sells a variety of purportedly naturally flavored products known as the Neuro beverage products, including, without

FIRST AMENDED CLASS ACTION COMPLAINT

limitation, the neuroSONIC Energy Refreshed superfruit infusion, neuroBLISS white raspberry, and the neuroPROTEIN watermelon mint products (collectively, the "Products").

7.      The labeling of the Products is false and misleading and the Products are thus misbranded under consumer protection laws.  Specifically, the Products are labeled as if they are flavored only with natural flavors when they in fact contain an undisclosed artificial flavor, malic acid, in violation of state and federal law.

8.      Defendant's packaging, labeling, and advertising scheme is intended to give consumers the impression that they are buying a premium, all-natural product with only natural flavoring ingredients instead of a product that contains artificial chemicals and that is artificially flavored.

9.      Plaintiffs, who were deceived by Defendant's unlawful conduct and purchased the Products in California, bring this action on their own behalf and on behalf of all other consumers to remedy Defendant's unlawful actions.

10.      On behalf of the Class as defined herein, Plaintiffs seek an Order compelling Defendant to, among other things: (1) cease packaging, distributing, advertising and selling the Neuro beverage products in violation of U.S. FDA regulations, California consumer protection laws, and state common laws; (2) re-label or recall all existing deceptively packaged Neuro beverage products; (3) conduct a corrective advertising campaign to inform consumers fully; (4) award Plaintiffs and other Class members restitution, actual damages, and punitive damages; and (5) pay all costs of suit, expenses, and attorneys' fees.

**PARTIES**

11.      Plaintiff Renee Young is a citizen of the State of California and resides in Windsor, California.

12.      Plaintiff Joycette Goodwin is a citizen of the State of California and resides in Torrance, California.

13.      Plaintiffs purchased the neuroSONIC Energy Refreshed superfruit infusion, neuroBLISS white raspberry, and the neuroPROTEIN watermelon mint products for personal consumption several times during the last three years in the State of California.

FIRST AMENDED CLASS ACTION COMPLAINT

14.     Plaintiffs are informed and believe, and upon such information and belief allege, that Defendant Neurobrands, LLC is a Delaware limited liability company with its principal place of business located in Sherman Oaks, California.

15. Plaintiffs are informed and believe, and upon such information and belief allege, that Defendant, at all times relevant, conducted business in the State of California and within this District.

## FACTUAL BACKGROUND

### Defendant Does Not Disclose that the Products Are Artificially Flavored.

16.     Defendant's labeling and advertising scheme is deliberately intended to give consumers the false impression that the Products are composed only of natural flavors, including, in the case of the neuroSONIC Energy Refreshed superfruit infusion product purchased by Plaintiffs, "natural flavors" and "no artificial colors or flavors."

17.     The image below is a reproduction of the front label of the neuroSONIC Energy Refreshed superfruit infusion product.



FIRST AMENDED CLASS ACTION COMPLAINT

18.     As depicted, the neuroSONIC Energy Refreshed superfruit infusion product's front label prominently displays a "natural flavors" designation with the notation "no artificial colors or flavors." Defendant painstakingly and intentionally designed this product label and the other labels for its Products to deceive consumers into believing that there are no artificial ingredients, including artificial flavoring agents or artificial chemicals contained in the products.

19.     All of the Products, however, contain a synthetic chemical flavoring compound identified as "malic acid."   Specifically, the neuroSONIC Energy Refreshed superfruit infusion product's back label states that the ingredients include: "Ingredients: reverse osmosis filtered water, crystalline fructose, natural flavors, reduced sugar fruit extracts (acai, pomegranate, blueberry), caffeine, L-theanine (L-TeaActive®), citric acid, ***malic acid***, fruit & vegetable juice (for color), sodium benzoate & potassium sorbate (to preserve freshness), sucralose, alpha GPC, pyridoxine HCL, ergocalciferol, cyanocobalamin." (Emphasis added).

20.     This "malic acid" is an inexpensive synthetic chemical used in processed food products to make the taste like tangy fresh fruits – like blueberries, lemons, mangos, or cherries, and in the Products Plaintiffs purchased, like the "superfruit" or "watermelon" flavors advertised.

21.     Under these circumstances, the labels of the Neuro Products violate California and federal statutes and state common law in multiple respects.

22.     First, because each of the Products contain additional flavoring ingredients that simulate and reinforce the characterizing flavor, the front label is required by law to disclose those additional flavors rather than misleadingly suggest that the Products are naturally flavored and contain no artificial flavors.  (California Health & Safety Code § 109875 *et seq.,* (Sherman Law), incorporating 21 C.F.R. § 101.22.)[1]

---

[1] California's Sherman Food, Drug and Cosmetic Act, California Health & Safety Code § 109875 *et seq.,* incorporates into California law all regulations enacted pursuant to the U.S. Food Drug and Cosmetic Act.   An act or omission that would violate an FDCA regulation necessarily violates California's Sherman Law.  (Health & Safety Code, § 110100.)  Regulatory citations in the text are to California's Sherman Law and reference the corresponding federal regulation for convenience.

FIRST AMENDED CLASS ACTION COMPLAINT

23.     Second, the Products' ingredient lists violate federal and state law because they identify, misleadingly, the malic acid flavoring only as the general "malic acid" instead of using the specific, non-generic name of the ingredient. (*See* 21 C.F.R. § 101.4(a)(1).)

24.     Even more deceptive, however, is the fact that the Products, rather than being flavored only with natural and non-artificial flavors as the labels suggest, contain an undisclosed artificial flavor made from petrochemicals. Defendant conceals this from consumers.

25.     There is a different, naturally-occurring form of malic acid found in some fruits and vegetables. Defendant does not use this type of malic acid; it instead adds a synthetic industrial chemical called d-1 malic acid,[2] in the form of a racemic mixture of d- and 1-isomers, to flavor the Products and make them taste like fresh fruit. Testing of the Neuro Sonic Energy Refreshed Superfruit Infusion product that was conducted on August 6, 2018 confirms that it contains artificial d-l malic acid.

26.     This type of "malic acid" is not naturally-occurring but is in fact manufactured in petrochemical plants from benzene or butane – components of gasoline and lighter fluid, respectively – through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts.

27.     Both the natural and unnatural forms of malic acid are considered "GRAS" (generally recognized as safe) for use as flavorings in foods marketed to adults[3]; the d-malic acid form, however, has never been extensively studied for its health effects in human beings. Both forms confer a "tart, fruity" flavor to food products.[4]

28.     Defendant uses this artificial petrochemical, d-1 malic acid, in its Products but pretends otherwise, conflating the natural and artificial flavorings and deceiving consumers.

29.     Because they contain artificial flavoring, both federal and state law require the Products to display both front- and back-label disclosures to inform consumer that they are artificially flavored. (21 C.F.R. § 101.22.)

---

[2] D-malic acid is also called d-hydroxybutanedioic acid or (R)-(+)-2-Hydroxysuccinic acid.

[3] The d-l form of malic acid, the one used by Defendant, is forbidden for use in baby foods out of health concerns if consumed by infants.

[4] https://thechemco.com/chemical/malic-acid/ (last visited September 26, 2018).

FIRST AMENDED CLASS ACTION COMPLAINT

30.     These Products have neither front-label nor back-label disclosures.    Defendant intentionally designed these Product labels without the required disclosure of "Artificial Flavoring" on the front or back of the label for the purpose of deceiving consumers into believing that there are no artificial ingredients, artificial flavoring agents or artificial chemicals contained in the Products.  It is currently unknown whether the Products are also contaminated with precursor chemicals used in the manufacturing of d-1 malic acid.

31.     California law, incorporating and identically mirroring U.S. Food, Drug and Cosmetic Act regulations by reference, requires that a food's label accurately describe the nature of the food product and its characterizing flavors.  (21 C.F.R. § 102.5(a).)

32.     Under FDA regulations, a recognizable primary flavor identified on the front label of a food product is referred to as a "characterizing flavor."  (21 C.F.R. § 101.22.)

33.     FDA regulations and California law establish that if "the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavors by word, vignette, e.g., description of a fruit, or other means" then "such flavor shall be considered the characterizing flavor." (California's Sherman Law, incorporating 21 C.F.R. § 101.22(i).)

34.     "[W]atermelon Mint" and "natural flavors" are primary recognizable flavors identified on the neuroPROTEIN beverage products' front labels.   These are characterizing flavors under California and federal regulations.

35.     If a product's characterizing flavor is not created exclusively by the characterizing flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either or both of natural or artificial flavorings.  If any artificial flavor is present which "simulates, resembles or reinforces" the characterizing flavor, the food must be prominently labeled as "Artificially Flavored."  (California's Sherman Law, incorporating 21 C.F.R. § 101.22(i)(3), (4).)

36.     A food product's label also must include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) … when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance … and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the

food."  (California's Sherman Law, incorporating 21 C.F.R. § 102.5(c).)  Such statements must be in boldface print on the front display panel and of sufficient size for an average consumer to notice.  (*Id.*)

37.    The synthetic d-l malic acid in the Products simulates, resembles, and reinforces the characterizing fruit flavors of the Products. Under these regulations, Defendant was required to place prominently on the Products' front labels a notice sufficient to allow California consumers to understand that the Products contained artificial flavorings.

38.    Defendant failed to do so, deceiving consumers and violating California law, federal law, and corresponding state common laws.

39.    Accordingly, Plaintiffs and the Class were unaware that the Products contained artificial flavoring when they purchased them.

40.    When purchasing the Products, Plaintiffs and Class Members were seeking products of particular qualities that were flavored only with the natural ingredients claimed on the label and which did not contain artificial flavoring.

41.    Plaintiffs are not alone in these purchasing preferences.  As reported in Forbes Magazine, 88% of consumers polled recently indicated they would pay more for foods perceived as natural or healthy.  "All demographics [of consumers] – from Generation Z to Baby Boomers – say they would pay more" for such products, specifically including foods with no artificial flavors.[5]  Forty-one percent (41%) of consumers rated the absence of artificial flavors in food products as "Very Important," and eighty percent (80%) of North American consumers are willing to pay a premium for foods with no artificial ingredients.[6]

42.    John Compton, the CEO of a beverage manufacturer, spoke to investors at the Morgan Stanley Consumer & Retail Conference, stating: "We have talked extensively to consumers about this idea, and they come back and tell us the number one motivation for purchase is products that claim to

---

[5] *Consumers Want Healthy Foods - And Will Pay More For Them*"; Forbes Magazine, February 15, 2015. https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/#4b8a6b4b75c5; (last visited September 26, 2018).

[6] The Nielsen Company, Global Health and Wellness Survey, "Healthy Eating Habits Around the World," 2015; https://www.nielsen.com/content/dam/nielsenglobal/eu/ nielseninsights/pdfs/Nielsen%20Global%20Health%20and%20Wellness%20Report%20-%20January%202015.pdf; (last visited September 26, 2018)

FIRST AMENDED CLASS ACTION COMPLAINT

be natural."  Defendant's labeling and advertising reflect these consumer preferences – not by making the Products solely with natural ingredients, but instead by concealing the fact that the Products are artificially flavored.

43.   California's Health & Safety Code states that "[a]ny food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless its labeling states that fact." (California Health & Safety Code, § 110740.)

44.   California law requires Defendant to include sufficient notice on the Products' labels to alert California consumers that the Products are artificially flavored.  Defendant failed to do so.  Accordingly, Defendant's Products were misbranded and illegal to distribute or sell in California. (California Health & Safety Code, §§ 110740, 110760, 110765.)

45.   Because the Products violated California law, they were misbranded when offered for sale in California.

46.   Plaintiffs and the Class lost money as a result of Defendant's conduct because they purchased Products that contained undisclosed artificial flavors and were illegal to sell.

**Plaintiffs' Purchases of the Neurobrand Beverage Products**

47.   Plaintiff Renee Young purchased the neuroPROTEIN watermelon mint products in Windsor, California during the Class Period defined herein.

48.   Plaintiff Joycette Goodwin purchased the neuroSONIC superfruit infusion, neuroPROTEIN watermelon mint, and neuroBLISS white raspberry products in Torrance, California during the Class Period defined herein.

49.   Plaintiff Renee Young's most recent purchase was in July 2016 at Wal-Mart located at 6650 Hembree Lane, Windsor, CA 95492.

50.   Plaintiff Joycette Goodwin's most recent purchase was in July 2018 at Wal-Mart located at 19503 Normandie Avenue, Torrance, CA 90501.

51.   Plaintiffs subsequently discovered Defendant's unlawful acts as described herein, when they learned that the Neurobrand beverage Products' characterizing flavors were deceptively created or reinforced using artificial flavoring even though Defendant failed to disclose that fact on the Neurobrand labels.

FIRST AMENDED CLASS ACTION COMPLAINT

52.     Plaintiffs were deceived by and relied upon the Products' deceptive labeling, and specifically the omission of the legally-required notice that it contained artificial flavorings. Plaintiffs purchased the Neurobrand Products believing they were naturally flavored, based on the Products' deceptive labelling and failure to disclose that it was artificially flavored.

53.     Plaintiffs, as reasonable consumers, are not required to subject consumer food products to laboratory analysis, scrutinize the back of the label to discover that the product's front label is false and misleading, or search the label for information that federal regulations require be displayed prominently on the front – and, in fact, under state law are entitled to rely on statements that Defendant deliberately places on the Neurobrand Products' labelling.  Defendant, but not Plaintiffs, knew or should have known that this labelling was in violation of federal regulations and state law.

54.     Because Plaintiffs reasonably assumed that the Neurobrand Products would be free of artificial flavoring, based on the Products' labels, when they were not, they did not receive the benefit of their purchase.  Instead of receiving the benefit of products free from artificial flavoring, they received Products that were unlawfully labeled to deceive the consumer into believing that they were exclusively naturally flavored and contained no artificial flavoring, in violation of federal and state labelling regulations.

55.     Plaintiffs would not have purchased the Products in the absence of Defendant's misrepresentations and omissions.  Had Defendant not violated California law, Plaintiffs would not have been injured.

56.     The Neurobrand beverage products were worth less than what Plaintiffs paid for them and Class members would not have paid as much as they have for the Products absent Defendant's false and misleading statements and omissions.

57.     Plaintiffs and the Class therefore lost money as a result of Defendant's unlawful behavior. Plaintiffs and the Class altered their position to their detriment and suffered loss in an amount equal to the amounts they paid for the Products.

58.     Plaintiffs intend to, seek to, and will purchase the Products again when they can do so with the assurance that the Products' labels, which indicate that the Products are naturally flavored, is lawful and consistent with the Products' flavoring ingredients.

**CLASS ACTION ALLEGATIONS**

59.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

60.    The Nationwide Class is defined as follows:

> All U.S. citizens who purchased the Products in their respective state of citizenship on or after January 1, 2012 and until the Class is certified, for personal use and not for resale, excluding Defendant and Defendant's officers, directors, employees, agents and affiliates, and the Court and its staff.

61.    The California Class is defined as follows:

> All California citizens who made retail purchases of the Products in California on or after January 1, 2012 and until the Class is certified, for personal use and not for resale, excluding Defendant and Defendant's officers, directors, employees, agents and affiliates, and the Court and its staff.

62.    During the Class Period, the Products unlawfully contained the undisclosed artificial flavors d-malic acid or d-l malic acid and were otherwise improperly labeled. Defendant failed to label the Products as required by California law.

63.    During the Class Period, Class members purchased the misbranded Products, paying a price premium for those Products compared to similar products lawfully labeled.

64.    The proposed Classes meet all criteria for a class action, including numerosity, commonality, typicality, predominance, superiority, and adequacy of representation.

65.    This action has been brought and may properly be maintained as a class action against Defendant.  While the exact number and identities of other Class Members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are hundreds of thousands of Members in the Class. The Members of the Class are so numerous that joinder of all Members is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

66.    The proposed Classes satisfy typicality. Plaintiffs' claims are typical of and are not antagonistic to the claims of other Class members. Plaintiffs and the Class members all purchased the

FIRST AMENDED CLASS ACTION COMPLAINT

Products, were deceived by the false and deceptive labeling, and lost money as a result, purchasing Products that were illegal to sell in California.

67.     The proposed Class satisfies superiority. A class action is superior to any other means for adjudication of the Class members' claims because each Class member's claim is modest, based on the Products' retail purchase prices which are generally under $5.00 per unit. It would be impractical for individual Class members to bring individual lawsuits to vindicate their claims.

68.     Because Defendant's misrepresentations were made on the label of the Products, all Class members including Plaintiffs were exposed to and continue to be exposed to the omissions and affirmative misrepresentations. If this action is not brought as a class action, Defendant can continue to deceive consumers and violate California law with impunity.

69.     The proposed Class Representatives satisfy the adequacy of representation requirement. Plaintiffs are adequate representatives of the Class as they seek relief for the Class, their interests do not conflict with the interests of the Class members, and they have no interests antagonistic to those of other Class members. Plaintiffs have retained counsel competent in the prosecution of consumer fraud and class action litigation.

70.     The proposed Classes satisfy commonality and predominance. There is a well-defined community of interest in questions of law and fact common to the Class, and these predominate over any individual questions affecting individual Class members in this action.

71.     Questions of law and fact common to Plaintiffs and the Class include:

a.     Whether Defendant failed to disclose the presence of the artificial flavoring ingredient d-l malic acid in the Product;

b.     Whether Defendant's labeling omissions and representations constituted false advertising under California law;

c.     Whether Defendant's conduct constituted a violation of California's Unfair Competition Law;

d.     Whether Defendant's conduct constituted a violation of California's Consumer Legal Remedies Act;

e.      Whether Defendant's label statements claiming natural and no artificial flavors was an affirmative representation of the Product's composition and conveyed an express warranty;

f.      Whether Defendant's conduct constitutes a breach of implied warranties under California's Commercial Code;

g.      Whether the statute of limitations should be tolled on behalf of the Class;

h.      Whether the Class is entitled to restitution, rescission, actual damages, punitive damages, attorney fees and costs of suit, and injunctive relief; and

i.      Whether members of the Class are entitled to any such further relief as the Court deems appropriate.

72.     Plaintiffs will fairly and adequately protect the interests of the Class, have no interests that are incompatible with the interests of the Class, and have retained counsel competent and experienced in class litigation.

73.     Defendant has acted on grounds applicable to the entire Class, making final injunctive relief or declaratory relief appropriate for the Class as a whole.

74.     Class treatment is therefore appropriate under Federal Rule of Civil Procedure 23.

75.     Class damages will be adduced at trial through expert testimony and other competent evidence.

76.     California law holds that the price-premium consumers paid for the falsely-advertised Products, as a percentage of the Products' retail prices, is a proper measure of Class damages.

77.     Food-industry consumer research is consistent and readily supports such estimates of that price-premium, as consumers quantitatively report that they seek out, value, and are willing to pay a premium for food products with no artificial flavors.

78.     On information and belief, based on publicly-available information, Plaintiffs allege that the total amount in controversy exclusive of fees, costs, and interest, based on the estimated price premium and Product revenues for sales to the Class in California during the proposed Class Period, exceeds $5 million.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### FRAUD BY OMISSION

#### CAL. CIV. CODE §§ 1709-1710

#### and the common laws of all States

#### (on behalf of the Nationwide Class and the California Class)

79.　Plaintiffs re-allege and incorporate by reference the allegations made elsewhere in the FAC as if set forth in full herein.

80.　Plaintiffs bring this claim for fraud by omission pursuant to California Civil Code §§ 1709-1710, *et seq.* and the common laws of all States. The elements of fraud are substantially similar from state to state, thus making nationwide class certification appropriate.

81.　Defendant actively concealed material facts, in whole or in part, with the intent to induce Plaintiffs and members of the Class to purchase the Products. Specifically, Defendant actively concealed the truth about the Products by not disclosing the existence of artificial flavoring ingredients on the front label of the Products as is required by California and federal law.

82.　Plaintiffs and the Class were unaware of these omitted material facts and would not have purchased the Products, or would have paid less for the Products, if they had known of the concealed facts.

83.　Plaintiffs and the Class suffered injuries that were proximately caused by Defendant's active concealments and omissions of material facts.

84.　Defendant's fraudulent concealments and omissions were a substantial factor in causing the harm suffered by Plaintiffs and the Class members as they would not have purchased the Products, or would have paid less for the Products if all material facts were properly disclosed.

///

///

///

///

///

FIRST AMENDED CLASS ACTION COMPLAINT

**SECOND CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

**CAL. CIV. CODE §§ 1709-1710**

**and the common laws of all States**

**(on behalf of the Nationwide Class and the California Class)**

85.     Plaintiffs re-allege and incorporate by reference the allegations made elsewhere in the FAC as if set forth in full herein.

86.     Plaintiffs bring this claim for negligent misrepresentation pursuant to California Civil Code §§ 1709-1710, *et seq.* and the common laws of all States. The elements of negligent misrepresentation are substantially similar from state to state, thus making nationwide class certification appropriate.

87.     Defendant had a duty to disclose to Plaintiffs and the Class members the existence of artificial flavoring ingredients on the front labels of the Products pursuant to California and federal law. Defendant was in a superior position than Plaintiffs and the Class members such that reliance by Plaintiffs and the Class members was justified. Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

88.     During the applicable Class period, Defendant negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the products, including the existence of artificial flavoring ingredients.

89.     Defendant was careless in ascertaining the truth of its representations in that it knew or should have known that Plaintiffs and the Class members would not have realized the true existence of artificial flavoring ingredients in the Products.

90.     Plaintiffs and the Class members were unaware of the falsity of Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

91.     Plaintiffs and the Class members would not have purchased the Products, or would have paid less for the Products, if the true facts had been known.

FIRST AMENDED CLASS ACTION COMPLAINT

1

2 **THIRD CAUSE OF ACTION**

3 **VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT**

4 **CAL. CIV. CODE §§ 1750, *et seq.***

5 **(on behalf of the California Class)**

6      92.    Plaintiffs re-allege and incorporate herein by reference the allegations contained in all

7 preceding paragraphs, and further allege as follows:

8      93.    The California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*

9 ("CLRA") prohibits any unfair, deceptive and unlawful practices, and unconscionable commercial

10 practices in connection with the sale of any goods or services to consumers.

11      94.    Plaintiffs and the Class are "consumers" as defined by Cal. Civ. Code § 1761(d). The

12 Products are a "good" as defined by Cal. Civ. Code § 1761.

13      95.    Defendant's failure to label the Products in compliance with federal and state labeling

14 regulations was an unfair, deceptive, unlawful, and unconscionable commercial practice.

15      96.    Defendant's conduct violates the CLRA, including but not limited to, the following

16 provisions:

17      § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not

18        have.

19      § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of

20        another.

21      § 1770(a)(9): advertising goods with intent not to sell them as advertised.

22      § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a

23        previous representation when it has not.

24      97.    As a result of Defendant's violations, Plaintiffs and the Class suffered ascertainable

25 losses in the form of the price premiums they paid for the deceptively labeled and marketed Products,

26 which they would not have paid had these Products been labeled truthfully, and in the form of the

27 reduced value of the Products purchased compared to the Products as labeled and advertised.

28

98.     On or about September 25, 2018, prior to filing this action, Plaintiffs sent a CLRA notice letter to Defendant which complies with California Civil Code § 1782(a). Plaintiffs sent Defendant, individually and on behalf of the proposed Class, a letter via Certified Mail, advising Defendant that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. A copy of Plaintiffs' September 25, 2018 CLRA letter is attached hereto as **Exhibit 1**.

99.     More than thirty days have passed since Plaintiffs sent Defendant their CLRA letter and Defendant has failed to take the corrective action described in Plaintiffs' letter. Wherefore, Plaintiffs seek damages, restitution, injunctive relief, and attorneys' fees and costs for Defendant's violations of the CLRA.

## FOURTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW, (UNLAWFUL PRONG)

### CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

### (on behalf of the California Class)

100.    Plaintiffs re-allege and incorporate by reference each and every allegation contained elsewhere in this FAC as if fully set forth herein.

101.    Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unlawful," "unfair" and "fraudulent" business practice. Section 17200 specifically prohibits any "unlawful . . . business act or practice."

102.    The UCL borrows violations of other laws and statutes and considers those violations also to constitute violations of California law.

103.    Defendant's practices as described herein were at all times during the Class Period and continue to be unlawful under, *inter alia*, FDA regulations and California's Sherman Law.

104.    Among other violations, Defendant's conduct in unlawfully packaging and labeling and distributing the Product in commerce in California violated U.S. FDA and California packaging and labeling regulations.

105.    The Products' front labels fail to disclose that they contain synthetic artificial flavoring, in violation of 21 C.F.R. § 101.22 and California's Sherman Law.

- 17 -

FIRST AMENDED CLASS ACTION COMPLAINT

106.    The "neuroPROTEIN watermelon mint" Product, for example, contains the synthetic dl-malic acid flavoring ingredient and does not contain any watermelon juice.

107.    The dl-malic acid is a synthetic flavoring material which creates, simulates, or reinforces the characterizing "Watermelon" flavor of the Product.

108.    The dl-malic acid in the Neurobrand Products are not derived from any natural material as defined in the applicable state regulations and is therefore, by law, an artificial flavor.

109.    Defendant fails to inform consumers of the presence of artificial flavors in the Products on the front label as required by law.

110.    Defendant's packaging, labeling, advertising, and marketing of its Neuro beverages are intentionally designed to give consumers the impression that they are buying a natural product instead of a product that contains artificial flavors, and are therefore likely to deceive reasonable consumers.

111.    Defendant's conduct further violates other applicable California and federal regulations as alleged herein.

112.    Defendant's practices are therefore unlawful under Section 17200 *et seq*. of the California Civil Code.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF THE UNFAIR COMPETITION LAW (UNFAIR PRONG)**

**CAL. BUS. & PROF. CODE §§ 17200,** *et seq.*

**(on behalf of the California Class)**

113.    Plaintiffs re-allege and incorporate by reference each and every allegation contained elsewhere in this FAC as if fully set forth herein.

114.    Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unfair . . . business act or practice."   Defendant's practices violate the Unfair Competition Law "unfair" prong as well.

115.    Defendant's practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because the conduct is unethical and injurious to California residents and the utility of the conduct to Defendant does not outweigh the gravity of the harm to consumers.

FIRST AMENDED CLASS ACTION COMPLAINT

116.    While Defendant's decision to label the Products deceptively and in violation of California law may have some utility to Defendant in that it allows Defendant to sell the Products to consumers who otherwise would not purchase an artificially-flavored product at the premium retail price, or at all, if it were labeled correctly, and to realize higher profit margins than if it formulated or labeled the Products lawfully, this utility is small and far outweighed by the gravity of the harm inflicted on California consumers.

117.    The consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one that consumers themselves could reasonably have avoided.

118.    Defendant's conduct also injures competing beverage manufacturers, distributors, and sellers that do not engage in the same unfair and unethical behavior.

119.    Moreover, Defendant's practices violate public policy expressed by specific constitutional, statutory, or regulatory provisions, including the Sherman Law, the False Advertising Law, and the FDA regulations cited herein.

120.    Plaintiffs' purchases and all California Class members' purchases of the Products took place in California.

121.    Defendant labeled the Products in violation of federal regulations and California law requiring truth in labeling.

122.    Defendant consciously failed to disclose material facts to Plaintiffs and the Class in Defendant's advertising and marketing of the Products.

123.    Defendant's conduct is unconscionable because, among other reasons, it violates 21 C.F.R. § 101.22(c), which requires all foods containing artificial flavoring to include:

A statement of artificial flavoring . . . [which] shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such a statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

124.    Defendant's conduct is also "unconscionable" because it violates, *inter alia*, 21 C.F.R. § 101.22, which requires all food products for which artificial flavoring provides a characterizing flavor to disclose this fact prominently on the product's front label.

FIRST AMENDED CLASS ACTION COMPLAINT

125.     Defendant intended that Plaintiffs and the Class rely on Defendant's acts and omissions to induce them to purchase the Products.

126.     Had Defendant disclosed all material information regarding the Products, Plaintiffs and the Class would not have purchased the Products or would only have been willing to pay less for the Products than they did.

127.     Plaintiffs suffered an injury in fact and lost money or property as a result of Defendant's deceptive advertising:  they were denied the benefit of the bargain when they  purchased the Products based on Defendant's violation of the applicable laws and regulations, and purchased the Products in favor of competitors' products, which are less expensive, contain no artificial flavoring, or are lawfully labeled.

128.     The acts, omissions, and practices of Defendant detailed herein proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, the price premium of monies spent to purchase the Products they otherwise would not have, and they are entitled to recover such damages, together with appropriate penalties, including restitution, damages, attorneys' fees and costs of suit.

129.     Section 17200 also prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons set forth above, Defendant engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business & Professions Code § 17200.

130.     Pursuant to California Business & Professions Code § 17203, Plaintiffs seek an order requiring Defendant to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendant to return to the Class the amount of money improperly collected.

### SIXTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW

### CAL. BUS. & PROF. CODE §§ 17500, *et seq.*

### (on behalf of the California Class)

131.     Plaintiffs re-allege and incorporate by reference each and every allegation contained elsewhere in this FAC as if fully set forth herein.

FIRST AMENDED CLASS ACTION COMPLAINT

132.    Defendant made and distributed, in California and in interstate commerce, Products that unlawfully fail to disclose the presence of artificial flavoring as required by federal and state labeling regulations.

133.    The Products' labeling and advertising in California presents the Products as if they were naturally flavored with no artificial colors or flavors.

134.    Under California's False Advertising Law ("FAL"), Business and Professions Code § 17500 *et seq.*,

> "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property . . .  to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device . . .  any statement, concerning that real or personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. . . ." Cal. Bus. & Prof. Code § 17500.

135.    Defendant's labeling and advertising statements on the Products' labels and in advertising and marketing materials are "advertising device[s]" under the FAL.

136.    Defendant's labeling and advertising statements, which communicated to consumers that the Products contain no artificial flavors and concealed the fact that they in fact contain synthetic artificial flavoring, were untrue and misleading, and Defendant at a minimum by the exercise of reasonable care should have known those actions were false or misleading.

137.    Defendant's labeling and advertising for Products as naturally flavored beverages which contain no artificial colors or flavors is deceptive in light of the fact that the Products actually contain the artificial flavor d-l-malic acid.

138.    Defendant's conduct violated California's False Advertising Law.

## SEVENTH CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTIES

#### CAL. COMM. CODE § 2313

FIRST AMENDED CLASS ACTION COMPLAINT

**(on behalf of the California Class and all states with substantially similar laws)**

139.    Plaintiffs re-allege and incorporate by reference each and every allegation contained elsewhere in this FAC as if fully set forth herein.

140.    The Products' front label representations misleadingly suggest that the Products are naturally flavored such as with watermelon or raspberries and contain no artificial flavors.

141.    Defendant's front label statement of contents, for example, "Watermelon Mint," "natural flavors," and "no artificial colors or flavors" was an affirmative representation of the Product's composition creating an express warranty.

142.    These promises became part of the basis of the bargain between the parties and thus constituted an express warranty, which Defendant breached because the Products are artificially flavored.

143.    Defendant sold the goods to Plaintiffs and the other Class members who bought the goods from Defendant.

144.    Plaintiffs and the Class did not receive goods as warranted by Defendant.

145.    Within a reasonable amount of time after Plaintiffs discovered that the Products contained synthetic flavorings, Plaintiffs notified Defendant of such breach.

146.    As a proximate result of this breach of warranty by Defendant, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

## EIGHT CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTIES

#### CAL. COMM. CODE § 2314

**(on behalf of the California Class and all states with substantially similar laws)**

147.    Plaintiffs re-allege and incorporate the allegations made elsewhere in the FAC as if set forth in full herein.

148.    Defendant's label representations also created implied warranties that the product was suitable for a particular purpose, specifically as an exclusively naturally-flavored beverage product containing no artificial flavors. Defendant breached this warranty.

149.    The Products' front labels misleadingly imply that they are flavored only with the

natural ingredients comprising the characterizing flavors.

151.    As alleged in detail above, at the time of purchase Defendant had reason to know that Plaintiffs, as well as all members of the Class, intended to use the Products as naturally-flavored beverage products.

152.    This became part of the basis of the bargain between the parties.

153.    Based on that implied warranty, Defendant sold the goods to Plaintiffs and other Class members who bought the goods from Defendant.

154.    At the time of purchase, Defendant knew or had reason to know that Plaintiffs and the Class members were relying on Defendant's skill and judgment to select or furnish a product that was suitable for this particular purpose, and Plaintiffs and the Class justifiably relied on Defendant's skill and judgment.

155.    The Products were not suitable for this purpose.

156.    Plaintiffs purchased the Products believing they had the qualities Plaintiffs sought, based on the deceptive advertising and labeling, but the Products were actually unsatisfactory to Plaintiffs for the reasons described herein.

157.    The Products were not merchantable in California, as they were not of the same quality as other products in the category generally acceptable in the trade.

158.    The Products would not pass without objection in the trade when packaged with the existing labels, because the Products were misbranded and illegal to sell in California.  Cal. Comm. Code 2314(2)(a).

159.    The Products also were not acceptable commercially and breached the implied warranty because they were not adequately packaged and labeled as required. Cal. Comm. Code 2314(2)(e).

160.    The Products also were not acceptable commercially and breached the implied warranty because they did not conform to the promises or affirmations of fact made on the container or label, Cal. Comm. Code 2314(2)(f), and other grounds as set forth in Commercial Code section 2314(2).

161.    By offering the Products for sale and distributing the Products in California, Defendant also warranted that the Products were not misbranded and were legal to purchase in California. Because the Products were misbranded in several regards and were therefore illegal to sell or offer for sale in

California, Defendant breached this warranty as well.

162. As a result of this breach, Plaintiffs and the other California consumers in the Class did not receive goods as impliedly warranted by Defendant.

163. Within a reasonable amount of time after the Plaintiffs discovered that the Products breached these warranties, Plaintiffs notified Defendant of such breach.

164. As a proximate result of this breach of warranty, Plaintiffs and other California consumers have been damaged in an amount to be determined at trial.

165. As a result, Plaintiffs, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, pray for judgment against Defendant as follows:

A. An order confirming that this action is properly maintainable as a class action as defined above;

B. An order appointing Plaintiffs as class representatives and The Law Office of Ronald A. Marron as counsel for the Class;

C. An order requiring Defendant to bear the cost of Class notice;

D. An order declaring that the conduct complained of herein violates the CLRA;

E. An order declaring that the conduct complained of herein violates the UCL;

F. An order declaring that the conduct complained of herein violates the FAL;

G. An order declaring that the conduct complained of herein breached express warranties, implied warranties, or both;

H. An order requiring Defendant to disgorge any benefits received from Plaintiffs and any unjust enrichment realized as a result of the improper and misleading labeling, advertising, and marketing of the Products;

I. An order requiring Defendant to pay restitution and damages to Plaintiffs and Class members so that they may be restored any money which was acquired by means of any

1    unfair, deceptive, unconscionable or negligent acts;

2    J.    An award of punitive damages in an amount to be proven at trial;

3    K.    An order enjoining Defendant's deceptive and unfair practices;

4    L.    An order requiring Defendant to conduct corrective advertising;

5    M.    An award of pre-judgment and post-judgment interest;

6    N.    An award of attorney fees and costs; and

7    O.    Such other and further relief as this Court may deem just, equitable, or proper.

8                           **<u>JURY DEMAND</u>**

9    Plaintiffs demand a trial by jury on all claims for damages. Plaintiffs do not seek a jury trial for

10   claims sounding in equity.

11

DATED: December 17, 2018          Respectfully Submitted,

12

13

14                                */s/ Ronald A. Marron*
                                  Ronald A. Marron

15                                **LAW OFFICES OF RONALD A. MARRON**
16                                Ronald A. Marron
                                  *ron@consumersadvocates.com*
17                                Michael T. Houchin
                                  *mike@consumersadvocates.com*
18                                651 Arroyo Drive
                                  San Diego, CA 92103
19                                Telephone: (619) 696-9006
20                                Fax: (619) 564-6665

21                                **PACIFIC TRIAL ATTORNEYS**
                                  A Professional Corporation
22                                SCOTT J. FERRELL (SBN 202091)
                                  sferrell@pacifictrialattorneys.com
23                                4100 Newport Place Drive, Ste. 800
                                  Newport Beach, CA  92660
24                                Tel: (949) 706-6464
                                  Fax: (949) 706-6469
25                                ***Counsel for Plaintiffs and the Proposed
                                  Class***

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT

# **EXHIBIT 1**

L A W   O F F I C E S   O F

# RONALD A. MARRON

A   P R O F E S S I O N A L   L A W   C O R P O R A T I O N

651 Arroyo Drive                                                                        Tel: 619.696.9006
San Diego, California 92103                                                          Fax: 619.564.6665

September 25, 2018

**<u>Via: Certified Mail, receipt acknowledgment with signature requested</u>**

Diana Jenkins, CEO
Neurobrands, LLC
15303 Ventura Blvd, Suite 675
Sherman Oaks, CA 91403

Greg Buscher, CFO
Neurobrands, LLC
15303 Ventura Blvd, Suite 675
Sherman Oaks, CA 91403

**Re:      California Consumers Legal Remedies Act (CLRA) Demand Letter, Notice of
              Anticipated Litigation and Duty to Preserve Evidence**

Dear Ms. Jenkins and Mr. Buscher,

In your roles as President and Chief Financial Officer for and on behalf of Neurobrands, LLC
**PLEASE TAKE NOTICE** that this notice letter constitutes the required 30-day notice before
claims for damages may be filed under the Consumers Legal Remedies Act, California Civ.
Code 1750 *et seq.* ("CLRA"), as well as the required pre-filing attempt to settle such a dispute
under the California Private Attorney General Statute.

Our clients, Ms. Renee Young and Ms. Joycette Goodwin purchased Neurobrand Beverages (the
"Products") for personal and household use in California several times since 2015. The products
are falsely advertised and further are misbranded under California law as each such Product
contains undisclosed artificial flavoring.

An example of the Product's front label is shown below.

Product Front Label



The Products' front labels fail to identify the Products as artificially flavored. However, for example, for the Sonic Energy Refreshed Superfruit Infusion product, the back-label states it includes the following ingredients: "Carbonated water, crystalline fructose, natural flavors, citric acid, **malic acid**, fruit and vegetable juice (for color), potassium sorbate, sodium benzoate, sucralose, pyridoxine HCI, soy lecithin."


The product labels fail to identify the Products as artificially flavored though they contain artificial malic acid. Instead, the products are falsely advertised as having "no artificial colors or flavors" and further are misbranded under California law as such Products contain undisclosed artificial flavors. The Product labels are therefore misleading and violates U.S. federal and California state labeling laws; constitutes false advertising as well as unfair competition and violations of the CLRA under California law.

While some forms of malic acid are natural, the malic acid in the Neurobrand products were found to be an artificial flavoring made from petrochemicals. Malic acid comes in two chemical forms. The l-malic acid form is a fruit acid that is found in fruits and vegetables and may be isolated from those sources, though it may also be produced industrially by chemical synthesis. The d- form of malic acid is not derived from natural sources, however; it is produced by chemical synthesis from certain petrochemicals, chiefly butane or benzene, through an intermediate conversion to maleic anhydride.

The malic acid in the Neurobrand Products were found to include d-malic acid, the synthetic petrochemical version of the compound. U.S. FDA regulations, incorporated verbatim into California's Sherman Law, define an artificial flavor as ". . . any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable

juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21CFR101.22 (a)(1)

The d-malic acid in the Neurobrand Products are derived from a petrochemical, not from "a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." *Id.* The malic acid in the Products is therefore an artificial flavor under U.S. federal and California law. *Id.*

Artificial flavors in food products must, under both U.S. and California law, be disclosed as such in the back-label ingredient list and on the front label in any product for which the artificial flavor simulates, resembles, or reinforces the characterizing flavor. See 21 CFR 101.22 (c), (g)(3), (h), and (i). The malic acid in the Products simulate, resemble, or reinforce the characterizing labeled fruit flavor.

Neurobrand's failure to disclose the artificial flavoring material on both the front and back labels of the Products therefore violates Federal regulations and California law.[1] The Products are misbranded and falsely advertised under California law, violate the CLRA as well as other California laws and regulations, and are illegal to sell in California with the current labeling.

Because the Products' labels failed to disclose the artificial flavoring, Ms. Renee Young and Ms. Joycette Goodwin were not aware at the time they purchased the Products that they were artificially flavored. Had the labels properly disclosed this, as required by California and Federal law, Ms. Renee Young and Ms. Joycette Goodwin and the class of California and/or U.S. consumers they propose to represent would not have purchased the Products or would not have paid the advertised prices for them.

Additional related products

California's CLRA notice procedure requires that all products intended to be included in subsequent CLRA litigation also be listed in the notice letter. The following Neurobrand products, in addition to the above-identified Product, also contain undisclosed artificial flavoring in the form of d-malic acid and are therefore included in this notice letter as well:

- Neuro Bliss Reduce Stress
- Neuro Sleep Sweet Dreams
- Neuro Protein Stronger You
- Neuro Trim A New You
- Neuro Daily Health
- Neuro Gasm Playful Energy
- Neuro Aqua Premium Hydration
- any other Neuro Drinks containing artificial d-malic acid that were offered for sale during the Class period (collectively the "Additional Products").

---

[1] This failure to disclose likely violates other states' consumer protection statutes as well.

Ms. Renee Young and Ms. Joycette Goodwin assert that these Additional Products also contain undisclosed or concealed artificial flavors, are therefore also mislabeled and misbranded under California law, and are similarly unlawful to sell in California. By this letter, Ms. Renee Young and Ms. Joycette Goodwin also provide the required CLRA pre-litigation notice regarding the Additional Products.

Class members in the proposed class of purchasers that Ms. Renee Young and Ms. Joycette Goodwin will represent in a putative class action purchased one or more of the Neurobrand products described herein. On behalf of themselves, all others similarly situated, and the general public, our clients therefore hereby demand that you remedy the above-described violations within 30 days of your receipt of this letter. This letter demands that you take prompt and specific corrective action, to include:

      1.  Revising the Products' and the Alternative Products' labeling such that all labels properly disclose any included artificial flavoring and do not improperly imply that the product is flavored only by natural flavor ingredients when it contains artificial flavoring, or,

      2.  reformulating the Products and the Alternative Products so that they do not include undisclosed artificial flavors; and,

      3.  recalling, or in the alternative, issuing mandatory corrected labels and instructions for re-labeling all currently unsold improperly-labeled stock;

      4.  conducting a corrective advertising campaign to inform consumers regarding the former improper product labeling; and,

      5.  initiating a process to refund monies paid by California consumers who purchased the above-listed Product and Additional Products that contained undisclosed artificial flavoring from January 1, 2012 to the present, where such products were not labeled to disclose the included artificial flavoring.

### Breach of Warranties and Violations of the Consumers Legal Remedies Act

This letter serves to notify you that the Neurobrand Products' packaging claims created express and implied warranties under the Magnuson Moss Warranty Act, 15 U.S.C. section 2301, et seq. and state law. Those warranties formed part of the benefit of the bargain and when the Products were not as warranted by YOU, our client suffered economic loss.

Please also be advised that the alleged unfair methods of competition or unfair or deceptive acts or practices are in violation of the Consumers Legal Remedies Act ("CLRA") and include, but are not necessarily limited to:

§ 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have.

§ 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another.

§ 1770(a)(9): advertising goods with intent not to sell them as advertised.

§ 1770(a)(10): Advertising goods or services with intent not to supply reasonably expectable demand, unless the advertisement discloses a limitation of quantity.

§ 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

If you do not promptly initiate these corrective actions, our clients, on behalf of themselves, all others similarly situated, and the general public, will bring legal claims for injunctive relief and actual and punitive damages under the CLRA and any other applicable consumer laws and regulations, to compel these steps, as well as seeking any other legally-appropriate restitution and/or damages, attorneys' fees, costs, incentive awards, and the costs of class notice and administration. If you do timely initiate these corrective actions our clients may choose not to seek injunctive relief but reserves the right to proceed with legal action on the basis of all past violations.

I would also like to remind you of your legal duty to preserve all records relevant to such potential litigation. *See*, *e.g.*, *Convolve, Inc. v. Compaq Computer Corp.,* 223 F.R.D. 162, 175 (S.D.N.Y. 2004); *National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556-57 (N.D. Cal. 2006).  We anticipate that at a minimum all e-mails, letters, reports, notes, minutes of meetings, voice mails, internal corporate instant messages, and laboratory and other records that relate to the formulation, testing, advertising, and marketing of the indicated Neurobrand products will be sought in the forthcoming discovery process. You therefore must inform any employees, contractors, and third-party agents such as product ingredient suppliers, product and flavor formulation consultants, and advertising agencies handling these product accounts to preserve all such relevant information.

Very truly yours,

*/s/ Ronald A. Marron*
Ronald A. Marron





**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Greg Buscher
15363 Ventura Blvd. Ste. 675
Sherman Oaks, CA 91403

9590 9402 1906 6104 1821 61

2. Article Number (Transfer from service label)

7015 0920 0002 4022 0349

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X
☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

9/2

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery ($500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Diana Jenkins
15303 Ventura Blvd,
Ste. 675
Sherman Oaks, CA 91403

9590 9402 1906 6104 1821 54

2. Article Number *(Transfer from service label)*

7015 0920 0002 4022 0356

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____
☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery
09/27

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ ~~~~~~~~~~~ Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt